ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| Weatherford Group, Inc. | ) ASBCA Nos. 59315, 59316 |
| | ) 59851, 59852 |
| Under Contract No. W91JA4-11-C-4005 | ) |

APPEARANCE FOR THE APPELLANT: Keith L. Baker, Esq.
Barton, Baker, Thomas & Tolle, LLP
McLean, VA

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
MAJ Julie A. Glascott, JA
Robert B. Neill, Esq.
Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE NEWSOM

These appeals involve contractor claims for reimbursement of costs charged by the government and paid by the contractor for military air travel services (MILAIR) used by contractor employees for performance of a contract. Weatherford Group, Inc. asserts that the contract required the government to provide MILAIR services at no cost to the contractor. The government asserts that the contract authorized the contractor to use MILAIR services but required it to pay for them.

Appellant elected accelerated procedures pursuant to Board Rule 12.3 in ASBCA Nos. 59851 and 59852. The Board has jurisdiction pursuant to the Contract Disputes Act, 41 U.S.C. §§ 7101-09. For the reasons set forth below, we deny the appeals.

SUMMARY FINDINGS OF FACT

1. On 14 January 2011 the Army's Phoenix Regional Contracting Center awarded Contract No. W91JA4-11-C-4005 (Contract) to Weatherford Group, Inc. (R4, tab 7 at 1). The Contract required Weatherford to provide support services and related supplies and equipment for Partner Nation military personnel in Afghanistan, to include services related to warehouses, billeting, and transportation, as described in the Statement of Work (SOW) (id. at 3, 34-50). The Contract provided for a base year of performance for a firm-fixed price of $3,221,875 plus the cost of Defense Base Act insurance, followed by two one-year options (R4, tab 7 at 2-7).

2. The Contract incorporated a local clause authorized by U.S. Central Command (CENTCOM) Contracting Command (C³), clause 952.225-0011, GOVERNMENT FURNISHED CONTRACTOR SUPPORT (JUL 2010) (C³ Clause). It summarized the "type of support the Government will provide the contractor, on an 'as-available' basis," and identified MILAIR as one of the services, stating in relevant part:

C³ CLAUSE 952.225-0011 GOVERNMENT FURNISHED CONTRACTOR SUPPORT (JUL 2010)

The following is a summary of the type of support the Government will provide the contractor, on an "as-available" basis. In the event of any discrepancy between this summary and the description of services in the Statement of Work, this clause will take precedence.

U.S. Citizens Accompanying the Force

| | | |
|---|---|---|
| ☒ APO/FPO/MPO/Postal Services | ☒ DFACs | ☒ Mil Issue Equip |
| ☐ Authorized Weapon | ☒ Excess Baggage | ☒ MILAIR |
| ☒ Billeting | ☒ Fuel Authorized | ☒ MWR |
| ☒ CAAF | ☒ Govt Furnished Meals | ☒ Resuscitative Care |
| ☒ Controlled Access Card (CAC)/ID Card | ☒ Military Banking | ☒ Transportation |
| ☐ Commissary | ☐ Military Clothing | ☐ All |
| ☐ Dependents Authorized | ☒ Military Exchange | ☐ None |

(R4, tab 7 at 31)

3. The SOW contained additional detail bearing upon government-furnished services and equipment. Section 10 listed specific items the government would provide, and subsection 10.11 stated that if a contractor employee required medical evacuation, the costs "to include the cost of the air medical evacuation" shall be the "responsibility of the contractor." (R4, tab 7 at 44-45)

4. SOW section 11, entitled "GENERAL INFORMATION," also addressed air transportation. Subsection 11.6, entitled "Travel and Lodging," imposed responsibility on the contractor to pay certain employee travel costs, stating:

> The contractor is responsible for the cost involved with contractor employee travel and lodging accommodations while deploying, re-deploying, and while on R&R travel.

(R4, tab 7 at 45)

5. The Contract also incorporated Defense Federal Acquisition Regulation Supplement (DFARS) clause 252.225-7040, CONTRACTOR PERSONNEL AUTHORIZED TO ACCOMPANY U.S. ARMED FORCES OUTSIDE THE UNITED STATES (JUL 2009) (R4, tab 7 at 18). Subsection (c)(4) of that clause required contractor personnel to "have a letter of authorization issued by the Contracting Officer in order to process through a deployment center or to travel to, from, or within the designated operational area." The letter of

2

authorization was to "identify any additional authorizations, privileges, or Government support that Contractor personnel are entitled to under this contract." (R4, tab 7 at 20)

6. Weatherford's owner, Richard Weatherford, testified that his company entered into one previous contract with the government in which the government provided MILAIR services at no cost to Weatherford (tr. 26, 72). Mr. Weatherford did not recall with certainty the agency involved in that prior contract (tr. 72), and appellant did not offer that prior contract or its terms in evidence.

7. Notice to proceed was effective 2 February 2011 and Weatherford was to start performing on or about 10 February 2011 (R4, tab 22).

8. During performance, Weatherford employees used MILAIR services. These services included flights between points within the operational area, flights to deploy into the operational area, flights to redeploy out of the operational area, and flights to seek medical attention. (Tr. 51-59, 188)

9. On 16 February 2012 roughly one year after Contract performance had commenced, the Defense Finance and Accounting Service (DFAS) sent the first of many vouchers to Weatherford seeking reimbursement for the cost of MILAIR services used by its employees during the first year of performance (R4, tab 36 at 2). The delay in billing was unexplained; neither party presented reliable evidence of the reason for the one-year delay in billing. Between February 2012 and October 2013, DFAS transmitted approximately 14 vouchers to Weatherford for more than 30 MILAIR flights (*id.* at 2-25). The vouchers totaled $56,526 (*id.* at 1).

10. Believing the vouchers to be in error, Weatherford's owner contacted U.S. Transportation Command (TRANSCOM) to seek correction (tr. 188-89). TRANSCOM was listed on the vouchers as the dispute point of contact (e.g., R4, tab 36 at 2). Mr. Weatherford was advised to pay the vouchers and request reimbursement from the contracting office (tr. 188-89).

11. On cross-examination, Mr. Weatherford testified that he could not recall the purposes of specific MILAIR flights for which his company was charged, but stated that all the flights were taken either for the purposes of deploying, redeploying, seeking medical attention outside the operational area, or for R&R (tr. 51-59, 188). We find the MILAIR flights for which Weatherford was charged were, more likely than not, taken for the purposes of deployment, redeployment, medical evacuation, or R&R.

12. Weatherford paid the vouchers (tr. 50-51) then submitted two requests for equitable adjustment (REAs) seeking reimbursement. The first REA sought $52,737; and the second REA sought $5,373, for a total request of $58,110. Both REAs included the certification required for CDA claims. (R4, tab 35 at 27, tab 37 at 9)

3

13. By written decision dated 14 February 2014, the contracting officer denied the requests (R4, tab 38). Weatherford filed an appeal with the Board on 14 May 2014, which was docketed as ASBCA Nos. 59315 and 59316.

14. The Board on 9 July 2014, *sua sponte*, raised several jurisdictional issues and directed a response from appellant followed by a reply from the government. Ultimately the government asserted a possible challenge to the Board's jurisdiction (Bd. corr. 20 October 2014). However on 15 August 2014, Weatherford re-styled the REAs as claims and submitted them (including the certifications) to the contracting officer along with a request for a final decision (R4, tabs 41-42, 45-46). The contracting officer denied the claims by letter dated 16 January 2015 (R4, tab 47). Appellant filed another notice of appeal with the Board on 23 February 2015, which was docketed as separate ASBCA Nos. 59851 and 59852. Appellant's counsel characterized the resubmission and the appeals as protective and as such the subject matter of ASBCA Nos. 59581 and 59852 are the same as ASBCA Nos. 59315 and 59316.[1]

## DECISION

These appeals present a straightforward issue of contract interpretation. We must determine to which party the Contract allocated responsibility for the cost of MILAIR services that Weatherford employees used.

In resolving contract interpretation disputes, we examine the contract as a whole, harmonizing and giving a reasonable meaning to all of its provisions. *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004); *ThinkQ, Inc.*, ASBCA No. 57732, 13 BCA ¶ 35,221 at 172,825. An interpretation that gives reasonable meaning to all parts of a contract is preferred to one that leaves a portion meaningless. *Hol-Gar Mfg. v. United States*, 351 F.2d 972, 979 (Ct. Cl. 1965); *LRV Environmental, Inc.*, ASBCA Nos. 8727, 59728, 15-1 BCA ¶ 36,042.

The government contends that C[3] Clause 952.225-0011, which identified the support that the government "will provide the contractor," authorized Weatherford to use MILAIR services but was silent as to responsibility for their costs. Responsibility to pay for MILAIR services was set forth, the government asserts, in SOW subsections 10.11 and 11.6, which expressly required the contractor to pay the costs of travel for medical evacuation, deployment, redeployment, or R&R (gov't br. at 11).

---

[1] Since ASBCA Nos. 59851 and 59852 are protective appeals, we process them under Rule 12.3 as well.

4

Appellant contends that the $C^3$ Clause portion stating that the government "will provide" MILAIR services meant that the government would provide *and pay* for those services. Because SOW subsections 10.11 and 11.6 purport to require Weatherford to pay for MILAIR services, appellant contends that the SOW conflicts with the $C^3$ Clause. Noting that the $C^3$ Clause expressly states that "[i]n the event of any discrepancy between this summary and the description of services in the Statement of Work, this clause will take precedence," appellant argues that the Board must disregard SOW subsections 10.11 and 11.6. (App. br. at 9-13)

We agree with the government's interpretation, which is reasonable and gives meaning to all portions of the Contract. The $C^3$ Clause summarizes the government support to which the contractor is entitled. SOW subsections 10.11 and 11.6 filled details regarding that support, plainly and expressly allocating cost responsibility for MILAIR services to the contractor. (Findings 2-4)

Appellant's interpretation, in contrast, would require us to read into the Contract a conflict between the SOW and $C^3$ Clause 952.225-0011 and would require us to disregard SOW subsections 10.11 and 11.6. That argument runs afoul of principles of contractual interpretation which provide that we should not construe a provision as being in conflict with another unless no other reasonable interpretation is possible. *Hol-Gar Mfg.*, 351 F.2d at 979.

Here, a reasonable interpretation is available that creates no conflict. Specifically, in the context presented here, we interpret $C^3$ Clause 952.225-0011 as an implementation of DFARS 252.225-7040(c)(4). That DFARS clause generally entitled the contractor to "authorizations, privileges, or Government support" (finding 5), but did not identify the specific support to be provided. The $C^3$ Clause picked up where the DFARS clause left off. Where the $C^3$ Clause stated that the government "will provide" certain services, the intention was to define the "authorizations, privileges, or Government support" to which DFARS 252.225-7040(c)(4) referred, and not necessarily to allocate responsibility for their costs. Reinforcing this interpretation is the fact that the $C^3$ Clause stated expressly that it was a "summary" of the "type of support" to be provided (finding 2). As a summary, it left the details – including cost responsibility – to be addressed elsewhere in the Contract. Those cost responsibilities were set forth in SOW 10.11 and 11.6 which stated expressly that the contractor would pay the costs of its employee travel (findings 3-4).

Appellant also argues that its prior course of dealing established that the government would pay MILAIR costs (app. br. at 14). This course of dealing is said to have included (1) appellant's allegation that in a single previous contract, the government did not charge Weatherford for MILAIR services; and (2) the government's

5

approximately one-year delay in billing Weatherford for MILAIR services on this Contract (app. br. at 14).

We hold that no prior course of dealing was established. A course of dealing is "a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." RESTATEMENT (SECOND) OF CONTRACTS § 223(1) (1981). Appellant did not introduce the prior contract in evidence nor present reliable evidence that the primary contract involved the "same contracting agency, the same contractor, and essentially the same contract provisions" as in these appeals (finding 6); *see T&M Distributors, Inc.*, ASBCA No. 51405, 00-1 BCA ¶ 30,677 at 151,509. As for the delay in billing, Weatherford presented no evidence that the delay reflected an understanding that the government would pay MILAIR costs, rather than simply being the result of an "accident or mistake" or a routine delay in billing processes (finding 6). *See Western States Construction Company*, ASBCA No. 37611, 92-1 BCA ¶ 24,418 at 121,894.

## CONCLUSION

For the reasons explained, the Board denies the appeals.

Dated: 21 October 2015

ELIZABETH W. NEWSOM
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

6

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59315, 59316, 59851, 59852, Appeals of Weatherford Group, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
